**Donald V. HATCH and Viola Hatch, Plaintiffs-Appellants,**

**v.**

**Earl E. GOERKE et al., Defendants-Appellees.**

**No. 74–1017.**

United States Court of Appeals, Tenth Circuit.

Argued July 12, 1974.

Decided Sept. 20, 1974.

Vincent L. Knight, Oklahoma City, Okl. (Richard L. Young, Native American Legal Defense & Education Fund, Inc., Albuquerque, N. M., on the brief), for plaintiffs-appellants.

Larry L. French, Edwards & French, Seminole, Okl. (William G. Smith, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., on the brief), for defendants-appellees.

Before HILL, SETH and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is a civil rights suit brought by parents of children attending the public schools of Canton, Oklahoma, asserting several federal constitutional claims against local school officials and the local District Attorney. Injunctive and declaratory relief and damages are sought, the claims being asserted as a suit under 42 U.S.C.A. §§ 1981–1983 and 2000d, and jurisdiction being claimed under 28 U.S.C.A. §§ 1343(3) and (4). Plaintiffs also requested convening of a 3-judge court pursuant to 28 U.S.C.A. §§ 2281–2284.

Essentially plaintiffs claim that their constitutional rights have been violated

in that: (1) the local rules for student appearance, by requiring the cutting of their son's Indian braided hair, violated their parental rights to raise their children according to their own religious, cultural and moral values in violation of the guarantees of the First, Fifth and Fourteenth Amendments of the federal constitution; (2) the expulsion of their son, without a hearing, from the Canton Public Schools for failure to have his hair cut in accordance with the rules was a denial of Fourteenth Amendment procedural due process; (3) the Oklahoma compulsory school attendance statutes, 70 O.S.A. § 10–105 et seq., are unconstitutionally vague and overbroad on their face, and invalid as applied; and (4) permitting religious services to be conducted by a Ministerial Alliance on the public school premises during school hours contravenes the establishment and free exercise clauses of the First Amendment protecting religious freedom. Plaintiffs aver a threat of prosecution by the District Attorney under the compulsory attendance statute and request a 3-judge court and equitable and other relief.

An order of the trial court concluded that plaintiffs had failed to distinguish their case from Freeman v. Flake, 448 F.2d 258 (10th Cir.), which held that the constitution does not impose on the federal courts the duty and responsibility of supervising the length of a student's hair, and that the problem, if it exists, is one for the states. On this authority the court dismissed the complaint and action. We affirm the dismissal as to the claim challenging the hair style regulation and the claim asserting the unconstitutionality of the compulsory school attendance statute, and the refusal to convene a 3-judge court. However, we are unable to agree that the claim of denial of due process by the expulsion without a hearing and the claim that religious services are being unconstitutionally permitted, were insubstantial. We must hold that those claims should not have been dismissed.

We will detail the facts and allegations of the complaint in discussing these propositions, to which we now turn.

First, plaintiffs challenge the validity of the rules for student appearance. They claim a constitutional right, as parents, to raise their children according to their own religious, cultural and moral values, and assert a deep belief of themselves and their son in maintaining his Indian appearance by wearing braids.

On this issue the complaint alleges essentially the following facts. The plaintiffs are husband and wife, Viola Hatch being an American Indian and an enrolled member of the Arapaho Tribe. They have three school-age children who have, until recently, regularly attended Oklahoma public schools, two daughters and one 10-year old son, Buddy. Defendant Cash is Superintendent of the Canton Public Schools and defendant Dow is the Elementary Principal in Canton. Defendants Herman Haigler, Hoots, Garriott, Bob Haigler and Acre comprise the Canton Board of Education. Defendant Goerke is the District Attorney for the District in which Canton is situated.

On or about September 20, 1972, Buddy Hatch is alleged to have been summarily expelled without a hearing from the fifth grade by Principal Dow for failure to have his hair cut in accordance with the school rules for student appearance. Those rules provided, among other things, that boys' hair should be kept trim and neatly groomed and should not extend below the eyebrows or on the collar. Buddy was wearing his hair in braids, in traditional Indian fashion, with the full approval and encouragement of his parents.

The complaint also averred that the plaintiffs explained to the defendant officials that the hair style of Buddy is not just a matter of personal freedom but that it is plaintiffs' wish to raise him so that he will be proud to be recognized as an Indian. It is alleged that

plaintiffs feel they have a basic right to inculcate in their children a knowledge of and respect for Indian customs, traditions and religious beliefs. And the complaint avers that defendants are attempting to coerce plaintiffs to have Buddy give up his traditional appearance, even in his own home, by the hair style rule.

Plaintiffs say their case is distinguishable from Freeman v. Flake, supra, since we there dealt only with student rights, and not parental rights. They assert that their constitutional rights, as parents, include the basic freedom to bring up their children according to their own religious, cultural and moral values, relying on Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15; Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, and Meyer v. Nebraska, 262 U.S. 390, 43 S. Ct. 625, 67 L.Ed. 1042. They argue that the challenged hair length regulation violates this parental right by imposing the school's non-Indian standard of appearance on their son, even in the privacy of their own home.

■ We must agree with the trial court that the distinction sought to be drawn does not avoid the reasoning in Freeman v. Flake. *Freeman* held that the federal constitution and statutes do not impose on the federal courts the duty and responsibility of supervising the length of a student's hair, and that the problem, if it exists, is one for the states and should be handled through state procedures. 448 F.2d at 259. And *Freeman* concluded that "[c]omplaints which are based on nothing more than school regulations of the length of a male student's hair do not 'directly and sharply implicate basic constitutional values' and are not cognizable in federal courts under the principles stated in Epperson v. Arkansas." 448 F.2d at 262.

See also New Rider v. Board of Education, 480 F.2d 693 (10th Cir.).

In view of this reasoning we feel that the complaint against the hair style regulation lacks constitutional substance regardless of who makes the challenge.[1] That the claim is one of invasion of parental rights is not, therefore, grounds for avoiding the *Freeman* holding, reaffirmed in *New Rider*.

Nor are we persuaded by plaintiffs' arguments based on Wisconsin v. Yoder. The *Yoder* case involved compulsory schooling that ". . . contravenes the basic religious tenets and practice of the Amish faith, both as to the parent and the child." 406 U.S. at 218, 92 S.Ct. at 1534. Despite the generalized allegations made by the plaintiffs here, we cannot agree that the hair style regulation involves a sharp clash with a complete and religiously founded concept of raising children as in *Yoder*.

*Freeman* did stress the absence of any claim of racial or religious discrimination. See 448 F.2d at 260. And *New Rider* likewise emphasized that there was no fundamental right at issue and that no suspect classification was being applied. 480 F.2d at 698. While the complaint here makes a broad claim of a discriminatory effect on the basis of race or national origin (Complaint, ¶10) along with other generalized allegations on religion as stated above, we do not feel the allegations are sufficient to place this case outside the holding of *Freeman* and *New Rider*. Thus we affirm the dismissal as to the claim challenging the hair style regulation as here applied.

■■ Secondly, we turn to the challenge to the validity of the Oklahoma compulsory school attendance statute, 70 O.S.A. § 10–105. The statute provides in essence that it is a misdemeanor punishable by a $50 fine or imprisonment in

---

1. We note that Glaser v. Marietta, 351 F. Supp. 555 (W.D.Pa.), in the context of a claim of parental right to prohibit corporal punishment of a child by school authorities, has recognized that parents have separate and distinct rights. Nevertheless, we feel that *Freeman* and *New Rider* control here.

the city jail for not more than 10 days, or both, to neglect or refuse to cause or compel a child to attend and comply with the rules of some public, private or other school, unless other means of education are provided for the full term the schools are in session. Plaintiffs argue that this statute, under which they are allegedly threatened with prosecution, is unconstitutionally vague and overbroad on its face, and invalid as applied in the case of their son.[2]

We are not persuaded that the school attendance statute is invalid. In terms it merely provides reasonable requirements for causing school attendance and compliance with the rules of some public, private or other school. "There is no doubt as to the power of a State, having a high responsibility for education of its citizens, to impose reasonable regulations for the control and duration of basic education." Wisconsin v. Yoder, 406 U.S. 205, 213, 92 S.Ct. 1526, 1532.

The Oklahoma statute recognizes a general but not unlimited power in the making of necessary school rules. See United States v. Cassiagnol, 420 F.2d 868, 876 (4th Cir.). We feel its purpose and scope are clear and that the claim of vagueness is untenable. See Broadrick v. Oklahoma, 413 U.S. 601, 607–609, 93 S.Ct. 2908, 37 L.Ed.2d 830; United States v. Guterma, 189 F.Supp. 265, 273–275 (S.D.N.Y.).

■ In connection with the claim of overbreadth, we note that the statute on its face makes no attempt to regulate free speech. And its application through the hair style rule does not control pure speech nor any form of "symbolic speech" within the protection of the First Amendment. *Freeman*, supra, 448 F.2d at 260–261. Our case is thus unlike Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471. In view of these circumstances and the terms of the statute we are convinced that the claim of overbreadth is likewise without merit. See Broadrick v. Oklahoma, supra, 413 U.S. at 609–618, 93 S.Ct. 2908; Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439. The real controversy here is with the local student appearance rule and, as stated, no substantial challenge can be made to it in view of *Freeman* and *New Rider*.

■ Plaintiffs say the trial court erred in not convening a 3-judge court to consider their claim for equitable relief against prosecution under the allegedly unconstitutional compulsory attendance laws. However, we are satisfied that the challenge to the underlying school attendance statute itself is clearly insubstantial and did not require convening a 3-judge court. Ex Parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152. The claim of invalidity of the hair style rule is likewise insubstantial and, since it is of only local application, the challenge to it did not require a 3-judge court in any event. Board of Regents v. New Left Education Project, 404 U.S. 541, 542–543, 92 S.Ct. 652, 30 L.Ed.2d 697.

Thus, we cannot agree that there was error in dismissing the claim of invalidity of the compulsory attendance statute or in failing to convene a 3-judge court and affirm the dismissal as to such claim and the denial of the request to convene a 3-judge court.

Next we consider plaintiffs' claim that the court erred in dismissing the claim of violation of the First Amendment guarantees of religious freedom.

The complaint averred that the defendants unconstitutionally permitted religious services to be conducted on the physical premises of the Canton public schools during school hours. These reli-

---

**2.** A further claim is made that the statute makes an unconstitutional delegation of power to define criminal conduct. Whether viewed as a form of federal due process claim, or as a pendent state law claim, we are satisfied for the reasons stated by us in rejecting the claim of vagueness that this related argument also lacks merit. See United States v. Grimaud, 220 U.S. 506, 521–522, 31 S.Ct. 480, 55 L.Ed. 563; United States v. Cassiagnol, 420 F.2d 868, 876 (4th Cir.).

gious services are allegedly conducted by the local Ministerial Alliance with the full cooperation and approval of defendant school officials. Plaintiffs allege further that defendants "even go so far as to tell plaintiffs' daughters what clothing they must wear to said services." (Complaint, ¶¶ 5 and 10). Defendants' actions are alleged to violate the establishment and free exercise clauses of the First Amendment.

■■ These allegations may not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80; Keenan v. Looney, 227 F.2d 878, 880 (10th Cir.). We cannot say that proof under such allegations could not make a case of violation of the religious freedom guarantees in view of several leading First Amendment cases.

The First Amendment's religious guarantees have been applicable to the States ever since the Supreme Court's decision in Everson v. Board of Education, 330 U.S. 1, 14–15, 67 S.Ct. 504, 91 L.Ed. 711. The Court there stated, id. at 15, 67 S.Ct. at 511:

> The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another.

We feel a substantial claim is alleged under the principles of cases applying the establishment clause. See McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649,[3] Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L. Ed.2d 601; School District of Abington Township v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844; see also Committee for Public Education & Religious Liberty v. Nyquist, 413 U.S. 756, 772–773, 93 S.Ct. 2955, 37 L.Ed.2d 948; Vaughn v. Reed, 313 F.Supp. 431 (W.D. Va.). We must hold that this claim may not be dismissed on its face since it raised a substantial question of violation of federal constitutional rights which these plaintiffs, as parents, are entitled to assert. E.g., Engel v. Vitale, supra, 370 U.S. at 423, 82 S.Ct. 1261.

We consider lastly plaintiffs' claim of denial of due process by expulsion of their son without a prior hearing. The complaint alleges that the son was summarily expelled without a hearing from the fifth grade of the Canton Elementary School by defendant Dow. The principal's letter to plaintiffs, attached as an exhibit to the complaint, states that until compliance is achieved with the rules for student appearance, admittance must be refused to their son. Thus the complaint and exhibit state at least that an indefinite suspension was imposed without a hearing, and based only on violation of the rules for student appearance.[4]

■■ Not every school disciplinary action gives rise to a federal constitutional claim. See Yench v. Stockmar, 483 F.2d 820, 823 (10th Cir.). However, it has been recognized that due process entitles students in the public schools to be accorded the rudimentary elements of a hearing before they are expelled or suspended for a lengthy or indefinite period, absent some extraordi-

---

3. The *McCollum* case involved classes conducted by a City Council on Religious Education with separate groups taught by Protestant, Catholic and Jewish representatives in the School buildings. Students not wishing the religious instruction were required to continue secular studies in other rooms. Students released from secular study for the religious instructions were required to be present at the religious classes. This religious instruction was held to violate the establishment clause. 333 U.S. at 211–212, 68 S.Ct. 461.

4. The Oklahoma School Code did provide for an appeal from suspension for immorality or persistent violation of regulations. See 70 O.S.A. § 24–101 (eff. July 2, 1971). This right to appeal, *after* the suspension was effected, was referred to by the letter from the principal in this case.

nary situation requiring immediate action before a hearing. See, e. g., Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193; Brown v. Strickler, 422 F.2d 1000 (6th Cir.); Farrell v. Joel, 437 F.2d 160 (2d Cir.); Betts v. Board of Education of City of Chicago, 466 F.2d 629 (7th Cir.); Strickland v. Inlow, 485 F.2d 186 (8th Cir.), cert. granted, 416 U.S. 935, 94 S.Ct. 1932, 40 L.Ed.2d 285 (4/16/74); Black Coalition v. Portland School District No. 1, 484 F.2d 1040 (9th Cir.); Vail v. Board of Education of Portsmouth School District, 354 F. Supp. 592, 601–604 (D.N.H.); Sullivan v. Houston Independent School District, 307 F.Supp. 1328, 1342–1343 (S.D. Tex.); Knight v. Board of Education of City of New York, 48 F.R.D. 108 (E.D. N.Y.). This follows from the Fourteenth Amendment due process principle that a hearing must be afforded before the deprivation of a protected interest, absent special circumstances. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569–570, 92 S.Ct. 2701, 33 L. Ed.2d 548; Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. And regardless of the validity of the hair style rule, the opportunity to appear and argue, at least, for leniency or special consideration could be of substantial value. See Betts v. Board of Education of City of Chicago, supra, 466 F.2d at 633; Knight v. Board of Education of City of New York, supra, 48 F.R.D. at 111.

We must hold that at least an informal hearing, with knowledge of the misconduct charged and an opportunity to respond or appeal for leniency, is called for before the opportunity to receive an education is denied through an expulsion or a lengthy or indefinite suspension.[5] Therefore, we cannot say that it appears beyond doubt that the plaintiffs can prove no set of facts entitling them to relief on this claim.[6] Conley v. Gibson, supra. Of course, we do not decide that there was a denial of procedural rights in the handling of this case by the defendant school officials. This must be determined when the facts are developed. We only hold that, on its face, this claim cannot be dismissed.

Accordingly the judgment is affirmed in part, vacated in part, and remanded for further proceedings.

---

5. As explained in Dixon v. Alabama State Board of Education, supra, 294 F.2d at 158, the nature and extent of the hearing should vary depending on the circumstances of the particular case.

6. We are satisfied that the parents—the ones to whom the principal's letter and its conditions were addressed—have a sufficient stake to assert the due process claim here. See Sullivan v. Houston Independent School District, supra, 307 F.Supp. at 1343.