CONTINENTAL COLLIERIES, Inc., v.
SHOBER, Jr.

No. 7925.

Circuit Court of Appeals, Third Circuit.

Argued May 20, 1942.

Decided Sept. 14, 1942.

James F. McMullan, of Philadelphia, Pa., for appellant.

Herman H. Krekstein, of Philadelphia, Pa., for appellee.

Before BIGGS, JONES, and GOOD-RICH, Circuit Judges.

JONES, Circuit Judge.

The question presented by this appeal is whether the plaintiff's complaint pleads an enforceable cause of action. The defendant moved to dismiss on the ground that the contract which furnishes the basis of the claim, as averred in the complaint, is unenforceable by reason of § 4 of the Pennsylvania Sales Act,[1] commonly known as the Statute of Frauds relating to personalty. The learned judge of the court below sustained the motion and dismissed the complaint.

Jurisdiction of the action is based upon diversity of citizenship. The complaint (as amended) alleges that Continental Collier-

[1] 1915 P.L. 543, § 4, 69 P.S. § 42, as amended.

ies, Inc., one of the plaintiffs, in 1938 entered into five written agreements with five owners or lessees of coal mines for Continental's exclusive sales agency of the coal produced by the mines. Each agreement provided that the agency thereby created was to endure for five years or until the exhaustion of the coal in the mines, respectively. Continental assigned to another of the plaintiffs, one Wattles, a one-half interest in each of the agency contracts in consideration of his services in negotiating them. The plaintiff Tate is the president of Continental.

On or about January 4, 1939, in Cincinnati, Ohio, Shober, the defendant, orally agreed to pay Continental $5,000 for an assignment of all of Continental's right, title and interest in and to the agency contracts. On January 13, 1939, Wattles, purporting to act as the agent of Shober sent a letter to Tate in the latter's capacity as president of Continental, enclosing a draft of such an assignment and requesting that it be executed by Continental and Tate. Wattles' letter stated that upon the return of the executed assignment Shober would "issue his check in your [Continental's] favor for $5,000.00" and that "upon receipt * * * [thereof] I [Wattles] will turn over to * * * [Shober] the executed papers and contracts and simultaneously mail * * * [Continental] Mr. Shober's check." By the assignment as drafted Tate, Wattles and Continental, in consideration of the sum of $5,000, were to assign to Shober all their right, title and interest in the five exclusive sales agency contracts. The assignment was executed by Continental and Tate and returned to Wattles with a letter from Continental on January 16, 1939, wherein Wattles was requested to "act as trustee in handling the closing of" the contract of assignment as contemplated by the last paragraph of Wattles' letter of January 13, hereinabove quoted in material part.

The complaint then avers that Shober neglected and refused to pay the consideration for the assignment or any part thereof; that at or about the time of the transactions looking to the assignment Shober was engaged in organizing a coal producing business in association with Wattles under the name of Antrim Coal Company; that through this company Shober had sold and at the time of the suit was selling the product of one or more of the mines covered by the exclusive sales agency contracts; and that thereby Shober accepted and retained the benefits of the assignment. The complaint further avers that Tate and Wattles have no interest in the $5,000 consideration for which the suit was instituted; that they were joined in the action only because their signatures were appended to the assignment at the request of Shober; and that they are not real parties in interest.

The learned judge of the court below held that under the averments of the complaint Wattles was one of the assignors and as such could not act as the agent of Shober for the purpose of signing a memorandum contemplated by the Statute of Frauds. The court was of the further opinion that the averment that Wattles was not a real party in interest did not overcome the earlier averment that he had an interest in the contracts assigned and that the allegation of Wattles' lack of any interest in the assignment could not be accepted in view of the provisions of the assignment attached to the complaint as an exhibit. The District Court also held that, as there was no averment of delivery of the assignment or that Shober acted under the assignment as sales agent for any of the coal companies, there was nothing by way of Shober's actual receipt and acceptance of the benefits of the assignment to remove the case from the operation of the statute. Accordingly, the court below held that the amended complaint failed to disclose a legally enforceable cause of action.

As federal jurisdiction of this case rests upon diversity of citizenship and the requisite amount in controversy, the substantive rights of the parties are to be determined according to local law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Included within such applicable law is the local rule of conflicts. Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477. In Pennsylvania, the situs of the federal jurisdiction in the instant case, the validity of a contract so far as it may be affected by the Statute of Frauds is generally determined by the law of the place of contracting. Bernstein v. Lipper Manufacturing Co., 307 Pa. 36, 43, 160 A. 770. Con-

**634**

sequently we look to the law of Ohio in the first instance. The courts of that state have ruled that the Ohio Statute of Frauds is remedial and attaches to all contracts wherever made when suit thereon is brought in Ohio. Heaton v. Eldridge, 56 Ohio St. 87, 46 N.E. 638, 639, 36 L.R.A. 817, 60 Am.St.Rep. 737. Under the Ohio law, as thus interpreted, a contract is not invalid simply because it lies in parol but, when oral, a remedy for its breach is denied unless one of the exceptions relieving of the bar of the statute is made affirmatively to appear. This being so, the Ohio law does not affect the validity of the contract here sued upon. Hence, the federal court sitting in Pennsylvania need concern itself only with the applicable local law. Is there anything therein which bars suit on the agreement here in question, which is a valid contract by the law of the place of execution?

■ It has been expressly stated in decisions of Pennsylvania courts that § 4 of the Sales Act of that state affects only the remedy and not the validity of the contract. Producers' Coke Co. v. Hoover, 268 Pa. 104, 109, 110 A. 733; Clegg & Clegg v. Lees & Lees, 82 Pa.Super. 584, 587. In some of the Pennsylvania decisions, an oral contract within the Statute of Frauds has been spoken of as "unenforceable" and the provision in the statute as "a limitation upon the judicial authority to afford a remedy". See Brown v. Sheaffer, 93 Pa.Super. 246, 247. But § 4 of the Pennsylvania Sales Act is to be distinguished from the fourth section of the Act of April 22, 1856, P.L. 532, 33 P.S. § 2, which declares that "all grants and assignments" of land shall be evidenced by a writing signed by the holder of the title "or else to be void". Thus, under the Act of 1856, it was held in Safe Deposit & Trust Co. v. Diamond Coal & Coke Co., 234 Pa. 100, 112, 83 A. 54, 58, L.R.A.1917A, 596, that a parol contract for the sale of land is a "nullity". The court there also spoke of the fourth section of the Act of 1856 as being "a limitation of judicial authority to afford a remedy" and this language has been quoted in later decisions construing § 4 of the Sales Act. See Manufacturers' Light & Heat Co. v. Lamp, 269 Pa. 517, 520, 112 A. 679. However, this should not be taken to imply that the court's construction of the

fourth section of the Act of 1856 is likewise to be the construction of § 4 of the Sales Act, for, whether a statute be substantive or procedural, its restrictions upon the enforcement of a right alike amount to a "limitation of judicial authority to afford a remedy". On the basis of the clear expressions by Pennsylvania's appellate courts in Producers Coke Co. v. Hoover, loc. cit. supra, and in Clegg & Clegg v. Lees & Lees, loc. cit. supra, it is our opinion that § 4 of the Pennsylvania Sales Act is procedural.

■ An aspect which serves to inject confusion in any consideration of the exact character of § 4 of the Pennsylvania Sales Act lies in the cases which hold that a plaintiff's statement of claim must contain all the facts necessary to show compliance with the requirements of the statutory provision. Vitro Mfg. Co. v. Standard Chemical Co., 291 Pa. 85, 97, 139 A. 615; Mason-Heflin Coal Co. v. Currie, 270 Pa. 221, 223, 113 A. 202. This rule is but the necessary result of the requirement of § 9 of the Pennsylvania Practice Act[2] which provides that "In actions on contracts it [the plaintiff's statement] shall state whether the contract was oral or in writing." However, this Act and the decisions construing it need not concern us, for in matters of pleading the federal courts, since the effective date of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, are no longer controlled by state practice. Swift & Co. v. Young, 4 Cir., 107 F.2d 170, 172. In the federal forum, the character of § 4 of the Pennsylvania Sales Act is therefore to be taken as being what the courts of that state have determined it to be, but without any effect from the requirements of the Pennsylvania Practice Act.

■ The appellant argues that the subject of the assignment, viz., the exclusive right to sell the coal produced at certain mines, is not a chose-in-action and that therefore the assignment was not within § 4 of the Sales Act. Concededly, the assignment was not "A contract to sell or a sale of any goods * * *." But the assignment would have supported a right of action for damages for the assignor's failure to respect Shober's exclusive right to sell under the agency contracts. The Restatement of Contracts, (1932) § 199, treats with a contract to sell or to buy "interests in intangibles" as being within pertinent local

---

[2] 1915 P.L. 483, 12 P.S. § 391.

statutes of frauds. We think that the subject matter of the assignment in this case was a chose-in-action within the contemplation of § 4 of the Pennsylvania Sales Act.

■ Under the Federal Rules of Civil Procedure the function of the complaint is to afford fair notice to the adversary of the nature and basis of the claim asserted and a general indication of the type of litigation involved. Securities and Exchange Comm. v. Timetrust, Inc., D.C. N.D.Cal., 28 F.Supp. 34, 41; 1 Moore, Federal Practice, 1938, § 8.01, p. 440; Clark, Simplified Pleading, 6 Federal Rules Service Law Review No. 57; Commentary, Proper Generality of Allegation in Pleading under the Federal Rules, 4 Federal Rules Service, Rule 8a.24. Under Rule 8 (a) (2) of the Federal Rules a plaintiff "sets forth a claim for relief" when he makes "a short and plain statement of the claim showing that the pleader is entitled to relief". See Sierocinski v. E. I. Du Pont de Nemours & Co., 3 Cir., 103 F.2d 843. Technicalities are no longer of their former importance, and a short statement which fairly gives notice of the nature of the claim is a sufficient compliance with the requirements of the rules.

■ While most defenses are to be pleaded affirmatively under the Federal Rules, Rule 12(b) (6) provides that the defense may take the form of a motion to dismiss for "failure to state a claim upon which relief can be granted". As observed in Leimer v. State Mut. Life Assur. Co., 8 Cir., 108 F.2d 302, 305, 306, "Such a motion, of course, serves a useful purpose where, for instance, a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted to him, or a claim which the averments of the complaint show conclusively to be barred by limitations." However the court in the Leimer case went on to admonish that there is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of the claim. See also De Loach v. Crowley's Inc., 5 Cir., 128 F.2d 378, 380. No matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to try to prove it.

■ In the instant case the amended complaint alleges the making of the oral contract of assignment and the execution of a written memorandum signed by one purporting to be the authorized agent of the party to be charged therewith. True enough, there is an allegation that the ostensible agent had an interest in the subject matter of the assignment, but there is a further averment that the agent had no real interest in the chose which was the subject matter of the sale and assignment. If the claimant can by proper proof establish the latter fact, the question of the agent's interest drops out of the case and at the same time his right to sign the memorandum for the party to be charged therewith may be established. Whether the defendant's sale of coal from mines covered by the agency contracts, as averred in the complaint, grew out of his receipt and acceptance of the benefit of the assignment would also depend upon the proofs as to Wattles' capacity and authority to accept delivery of the assignment for Shober. In these circumstances it can hardly be said that it appears "to a certainty" from the complaint that Continental is not entitled to "relief under any state of facts which could be proved in support of the claim". We are, therefore, of the opinion that the appellant should have been given an opportunity to prove the allegations of the amended complaint and that the District Court erred in sustaining the motion to dismiss.

■ On the question of whether the Statute of Frauds may be raised by a motion to dismiss or whether it should be pleaded as an affirmative defense there has been some differences of opinion. In Piest v. Tide Water Oil Co., D.C.S.D.N.Y., 27 F.Supp. 1020, 1021, the court said "* * * in any event the question [Statute of Frauds] should be presented by affirmative defense under Rule 8(c)." Also see Richard Nathan Corp. v. Mitsubishi Shoji Kaisha Limited, D.C.S.D.N.Y., 41 F.Supp. 299. But in Kahn v. Cecelia Co., D.C.S.D.N.Y., 40 F.Supp. 878, 879, the court said that, while under Rule 8(c) the Statute of Frauds is a defense to be pleaded affirmatively, where the defect appears on the face of the pleading, the question may be raised on motion to dismiss for insufficiency under Rule 12(b). See also 1 Moore, Federal

Practice, 1938, § 12.04, pp. 644–647. This view appears to be sound logically and certainly seems to be the better practice. Such being the rule, the defense of the statute in the instant case was a matter to be pleaded affirmatively under Rule 8(c). No defect, inhering because of the requirements of the statute, clearly appeared on the face of the pleading. A motion to dismiss for insufficiency under Rule 12(b) was, therefore, not indicated.

The judgment of the District Court is reversed and the cause remanded for further proceedings.